IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael L. Garn,

            Petitioner,

    v.

Warden James Haviland,

            Respondent.

Case No: 1:20-cv-00465

Judge James G. Carr

Magistrate Judge James E. Grimes Jr.

**ORDER**

This is a state habeas corpus action filed under 28 U.S.C. § 2254(d).[1] Pending are the Petitioner's Objection (Doc.  19) to Magistrate Judge James Grimes' Report & Recommendation (Doc. 15) and Respondent's Response. (Doc. 21).

For reasons that follow, I find, on *de novo* review, that the Petitioner's Objections are not well taken. Petitioner requests a Certificate of Appealability, which I deny. There are no grounds on which jurists of reason could rationally dispute the result that first the Magistrate Judge, and now I, have reached.[2]

**Background**

Before his indictment by a Richland County, Ohio Grand Jury, Petitioner, Michael Garn, was a Mansfield Police Officer. (Doc. 15, pgID 2971, citing Doc. 7, pgID 88). The Grand Jury initially indicted him in Case No. 2015-CR-197 on forty counts (seventeen counts of

---

[1] Petitioner originally filed his Petition *pro se.* Following filing of the ALJ's Report & Recommendation, he retained counsel.

[2] Judge Grimes' Report & Recommendation is characteristically thorough. That being so, I conclude that no extended discussion of the events leading to Petitioner's conviction, basic habeas corpus legal doctrine, or Magistrate Judge Grimes' careful analysis by me is necessary. Rather than summarize those portions of the Report & Recommendation, I simply focus on the Petitioner's Objections. It would serve no useful purpose to do otherwise.

1

unauthorized use of LEADS, fourteen counts of dereliction of duty, two counts of tampering with evidence, and one count of burglary, trespass, attempted gross sexual imposition, attempted sexual battery, menacing, sexual battery, and public indecency). (*Id.*). A grand jury subsequently indicted him in Case No. 2015-CR-673 on an additional count of menacing by stalking. (*Id.*).

The Court consolidated the cases for trial. The jury convicted Petitioner of twelve counts of unauthorized LEADS use, eleven counts of dereliction, and one count of tampering with evidence, sexual battery and menacing by stalking. (*Id.*). Petitioner received an aggregate sentence of 12.5 years for crimes that resulted from various acts of misconduct undertaken while cloaked, either actually or virtually, in uniform. (*Id.*, p. 88-9).

Petitioner has exhausted his state remedies. He appealed his conviction to the Richland County Court of Appeals. The appellate court overruled all five assignments of error. (Doc. 7, pgID 91). *State v. Garn*, 2017-Ohio-2969, 91 N.E.3d 109, (Ohio 5th Dist. May 19, 2017).

He further appealed to the Ohio Supreme Court, which dismissed the case for lack of jurisdiction. (Doc. 7, pgID 92). *State v. Garn*, 152 Ohio St. 3d 1406 (2018).Petitioner attempted to reopen the appeal on August 17, 2017, citing three assignments his attorney allegedly failed to raise. This App. R 26(B) application was overruled as meritless on October 12, 2017. (Doc. 7, pgID 93, citing Ex. 28, 29). See, *State v. Garn*, 2019-Ohio-1604, 2019 WL 1897663, ¶¶ 2(Ohio 5th Dist. April 19, 2019).

Petitioner then filed for Post-Conviction Relief ("PCR") pursuant to O.R.C. § 2953.21. (Doc. 7, pgID 93, Ex. 1). After a four-day hearing, the trial court dismissed the PCR claims. (*Id.*), *State v. Garn*, Case No. 2015-CR-0197 (Richland CCP July 17, 2018). He filed a second appeal with the Richland County Court of Appeals citing one assignment of error: "The Trial Court Abused its Discretion in Denying Petitioner's Petition for Post Conviction Relief." (Doc. 7, pgID 94, citing Ex. 37). The Fifth District affirmed denial of PCR relief. (Doc. 7, pgID 94,

2

citing Exhibit 42, Case No. 2018-CA-0071). *State v. Garn*, 2019 WL 1897663, *supra.* On appeal, the Ohio Supreme Court summarily dismissed the matter. (Doc. 7, pgID 94, citing Ex. 43, 46). *State v. Garn*, 156 Ohio St.3d 1478 (2019).

Petitioner now tries his hand in federal court through this § 2254 action. On February 28, 2020, five years and two days after the initial indictment, he filed his Petition for habeas relief. Magistrate Judge Grimes denied all five Grounds. (Doc. 15). He objects to the Magistrate Judge's conclusions only as to Grounds One and Three of the Petition. (Doc. 19).

In Ground One, Petitioner claims the trial court misapplied Ohio's Rape Shield Law, O.R.C. §§ 2907.02(D) and 2907.05(E), thereby depriving him of his Sixth Amendment right to confront and cross-examine one of his principal accusers. In Ground Three, petitioner claims violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois,* 360 U.S. 264 (1959) due to the Government's withholding of nine documents containing claimed recantations and other evidence. Petitioner claims, if known, this information would have been materially favorable to his case.

## Discussion

### Ground One - Limitation on Cross-Examination violated Petitioner's Sixth Amendment Rights under the Confrontation Clause

Neither the State Court of Appeals, nor Judge Grimes, found any error in how the trial judge applied (and followed the requirements of) Ohio's Rape-Shield Statutes, O.R.C. §§ 2907.02(D) and 2907.05(E). For the reasons that they express, I agree that the trial judge properly applied the law.

Specifically, Petitioner sought to introduce the prison discipline records of crime victim, Krystal Sawyer. Ms. Sawyer claimed Petitioner came to her home to investigate alleged theft of

socks from Dollar General. (Doc. 7, pgID 105). She testified Petitioner told her if she engaged in fellatio, she would not go to jail. (*Id.*).

Petitioner sought to introduce evidence that Ms. Sawyer, while incarcerated, was charged with and plead guilty to making a prior false allegation of sexual assault. After the trial court conducted the appropriate *voir dire* of her under Ohio's Rape-Shield Law, Ms. Sawyer denied making a false statement, stating sexual activity occurred, but there "was more to the story." (Doc. 7, pgID 107-9).

Citing principles under *State v. Cheney,* 1992 WL 66573 (Ohio 6th Dist. Mar. 31, 1992), *State v. Boggs,* 63 Ohio St.3d 418 (1992), and Ohio R. Evid. 608(B), the trial judge denied Petitioner the right to introduce the records or to otherwise examine her on this issue. (*Id.*). The Fifth District Court of Appeals upheld this decision. *State v. Garn*, 2017-Ohio-2969, 91 N.E.3d 109, 124 (Ohio 5th Dist. May 19, 2017) ("Based upon the Ohio Supreme Court's holding in *Boggs*, we find the trial court did not err in excluding the evidence. During voir dire, Sawyer testified she had not falsified any accusations…[and] further testified sexual conduct did occur. Pursuant to the case law cited, the evidence is barred by the rape shield statute.").

As the Magistrate Judge properly concluded, a violation of the Confrontation Clause can only arise where the underlying state legal doctrine itself violates the Constitution. *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015); *Williams v. Taylor,* 529 U.S. 362, 379 (2000). Clothing the Objection in federal Constitutional terms cannot conceal that fact.

But what is most significant to my decision, and as Respondent points out, at issue is an alleged misapplication of state statutory provisions pertaining to cross-examination of victims of rape and gross sexual imposition. An alleged misapplication or misuse of an evidentiary doctrine founded in state law is not cognizable in a § 2254 habeas corpus proceeding. *Lewis v. Jeffers*,

4

497 U.S. 764, 780 (1990). This is particularly so when a trial judge applies a law that precludes evidentiary matters and lines of inquiry. *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (quoting *Baner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citations omitted)).

Whenever a trial judge disallows a defense question on cross-examination, "confrontation," read most broadly, is curtailed. However, by its very nature, an evidentiary ruling does not improperly infringe upon the Constitutional Confrontation Clause. *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000) (holding precluding cross-examination of rape victim about prior false accusation of rape allegedly made by victim did not violate Confrontation Clause, and exclusion of testimony regarding victim's alleged prior accusation did not violate defendant's right to present defense).

Here, the trial court's limitation on Krystal Sawyer's cross-examination and refusal to allow introduction of her prison disciplinary records in accord with Ohio's Rape-Shield Statute did not violate the Confrontation Clause of the Sixth Amendment. There is, accordingly, no merit to Petitioner's Objection pertaining to Ground One. Nor is there any basis for granting a Certificate of Appealability as to this issue.

### Objection to Ground Three – *Brady* and *Napue* Violations - Prosecutorial Misconduct for failing to Turn over State's Evidence Supporting Petitioner

Under *Brady v. Maryland*, the government has a constitutional obligation to furnish a criminal defendant with impeachment and exculpatory evidence related to the defendant's guilt or possible punishment. 373 U.S. 83, 87; *United States v. Bagley*, 473 U.S. 667, 676 (1985). "A successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008). Evidence is deemed material "only if there is a reasonable probability that, had

5

the evidence been disclosed to the defense, the result of the proceeding would have been different..." *Bagley*, 473 U.S. at 682. In support of his *Brady* and *Napue*[3] claims, Petitioner points to nine pieces of evidence which were not produced in discovery.

Exhibit 1 is a one-page report authored by Lieutenant Joseph Petrycki dated November 24, 2014. (PCR Ex. 1) This document contains hearsay statements that Krystal Sawyer was telling people Petitioner raped her and there was a "big investigation." However, this statement is meaningless, because at no time did Ms. Sawyer recant her story. She told Petitioner's attorney and private investigator the same story she told the prosecution. She was adamant she did not lie about the sexual assault. She threatened to recant because she was being held for an F-5 crime with bond set at $100,000 and thought recanting would help get her out of jail. (Doc. 7, pgID 129-30, citing 1 PCR T. at 78, 2 PCR T. at 230-31, 3 PCR T. at 327-28, 6 PCR T. at 478-80).

Lt. Petrycki also documented in this report that inmate, Margaret Konczak,[4] was overheard making similar comments about Petitioner. But, two female trustees, Loretta Chin and

---

[3] In *Napue v. Illinois,* 360 U.S. 264 (1959), the state's principal witness committed perjury on the stand, which the prosecutor knew to be false and did not correct him. The Supreme Court found this conduct violated the defendant's due process of law even though the false testimony only went to credibility. As the Court held:

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

*Id*. at 269.

[4] Konczak was arrested for attempted theft. While awaiting booking, officers found a yellowish rock, resembling heroin, in her purse. Petitioner engaged Konczak, who admitted she had an addiction. She alleged Petitioner told her if she came to see him upon release, he would make this "go away." Petitioner did not follow proper logging and testing procedures on the substance. He failed to submit it to the crime lab, testifying he conducted a field test and threw away the substance when the test was negative (stating he believed it to be a cutting agent). For this conduct, Petitioner was convicted of Dereliction of Duty and Tampering with Evidence. Konczak never complained about alleged *quid pro quo,* thus Petitioner was never charged with a sexual crime. (Doc. 7, pgID 125-27).

Ashley Shriner, overheard Konczak tell Sawyer it was not true and that she lied to help Sawyer's case against Petitioner. (Doc. 7, pgID 124-25, PCR Ex. 1). Lt. Petrycki placed the document in his Captain's box, but Capt. Snavely testified he did not recall seeing it, and no further investigation occurred. (*Id.* at 125, citing 3 PCR T. at 442-45). At the PCR hearing, Chin and Shriner testified Konczak confessed quite remorsefully that she had lied. (Doc. 7, pgID 127, citing 2 PCR T. at 213, 234, 4 PCR T. at 497, 504). However, in the end, this hearsay testimony was immaterial because Petitioner was convicted of crimes related to his handling of potential drugs found in Konczak's purse, not for any sexual crime. (*Id.*).

In addition, Petitioner challenges the State's failure to turn over Exhibit 7, which is a rough draft of a July 22, 2015 *Touhy*[5] request prepared by then Prosecutor Bambi Couch-Page, requesting the testimony of FBI Agent Fisher. (PCR Ex. 18). However Petitioner's Objection is misplaced. There was nothing for the state to produce. Agent Fisher only interviewed Petitioner. So, the best source of any information the FBI could have revealed was Petitioner himself. Furthermore, this letter was a mere draft prepared from a request in another case. The Prosecutor never finalized it or sent it, so the state never received any information from the FBI. Doc. 7, pgID 129-31, citing 4 PCR T. 533-37, 539-40, 4T at 206). Therefore, there could be no *Brady* violation as to the failure to produce this exhibit.

Petitioner further complained about Exhibit 8, a one paragraph unsigned, unverified "complaint" on plain paper authored by Lt. Joy Storz. This document contained double hearsay reports that on January 8, 2015, she received a call from a third-party stating Petitioner appeared at her house looking for Krystal Sawyer, who was "scared to death." (PCR Ex. 8). Lt. Storch

---

[5] Named after the Supreme Court case, *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), a *Touhy* request seeks any official information for litigation purposes, including witnesses and documents, when the Government is not a party to the litigation.

requested Detective Deitrich offer Sawyer protective custody, which Sawyer declined. (*Id.*, see also, Doc. 7, pgID 134, citing 3 PCR Tr. 369-73). This document lends absolutely nothing to Petitioner's case.

Exhibit 9 is even more tenuous. This is an August 25, 2014 summary prepared by Officer Rich Miller. Also unsigned, unverified and on plain paper, Officer Miller documented the complaint of Ashley Matthews against a doctor she accused of trading prescriptions for sexual favors. Ms. Matthews also alleged Petitioner took heroin from her and hid it to coerce her into having sex. Officer Miller documented that Matthews, comparing the two, stated the doctor is "as corrupt" as Petitioner. (Doc 7, pgID 136, PC Tr. at 422-26). Notable for this case, the jury found Petitioner not guilty of all counts associated with Ms. Matthews.

The remaining unproduced documents for which Petitioner claims *Brady/Napue* violations (Ex. 11, 12, 13, 14, and 15) pertain to LEADS violations involving Kim McBride, Jamie Woods, Kellie Harding, Officer Susan Moser-Napier, and her brother Mike Napier. Petitioner was only convicted of a LEADS violation involving Mr. Napier. The information contained in those documents was therefore immaterial. (Doc. 7, pgID 137-39).

In light of my overview of the undisclosed material, whether by individual exhibit or *in toto*, I find the decisions by the state courts and Magistrate Judge Grimes to be well-taken in all respects. I concur that these documents and the evidence contained therein do not give rise to a *Brady* or a *Napue* violation. Even if the documents had been produced and admitted into evidence, the outcome of Petitioner's convictions would not have changed.

Moreover, as the Fifth District Court of Appeals already determined; as the Magistrate Judge ruled; and as Respondent aptly points out, the Petitioner's Objection presents many arguments that he had not previously raised in the trial court. *See* ). *State v. Garn*, 2019-Ohio-1604, 2019 WL 1897663 ¶128-30 (Ohio 5th Dist. April 19, 2019). (See also, Doc. 21, pgID 3077;

Doc. 15, pgID 3008) ("Ohio courts regularly apply the doctrine of *res judicata* to foreclose review of claims that could have been or were raised in an earlier proceeding."). Such failure constitutes a procedural default barring habeas consideration of those arguments. *See, e.g., Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010).

That being so, I deny relief and decline to issue a Certificate of Appealability as to this Ground.

## Conclusion

For the foregoing reasons, it is hereby ORDERED THAT:

1. The Petitioner's Objection to Magistrate Judge Grimes' Report & Recommendation (Doc. 19) be, and the same hereby is, **denied;**

2. The Magistrate Judge's Report & Recommendation (Doc. 15) denying habeas corpus relief to the Petitioner be, and the same hereby is, **adopted** as the Order of this Court;

3. The Petition under 28 U.S.C. § 2254 (Doc. 1) for a Writ of Habeas Corpus be, and the same hereby, is **denied**; and

4. Because jurists of reason could not rationally dispute the reasoning and rationale of both the Report & Recommendation and this resulting Order, I **decline to issue** a Certificate of Appealability.

**So ordered.**

/s/ James G. Carr
Sr. U.S. District Judge